No. 22-55846

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**ALAISHA TYSHARI BROWDER, individually; DORISTEEN COLEMAN,
as guardian ad litem for minor children, D.K.A. and M.K.T.,**
*Plaintiffs and Appellants,*

**vs.**

**COUNTY OF SAN BERNARDINO; JEREMIAH CORNETT; THOMAS
BOYDSTON; and DOES 1 through 10, inclusive,**
*Defendants and Appellees,*

On Appeal from the United States District Court
for the Central District of California
United States District Court Judge Jesus G. Bernal
Case No. 5:19-cv-02306-JGB (SPx)

**APPELLANTS' OPENING BRIEF**

Brenton W. Aitken Hands, SBN 308601
Jerry L. Steering, SBN 122509
LAW OFFICES OF JERRY L. STEERING
4063 Birch Street
Suite 100
Newport Beach, CA 92660
Tel.: (949) 474-1849
Fax: (949) 474-1883
e-mail: brentonaitken@gmail.com
e-mail: jerrysteering@yahoo.com

Attorneys for Plaintiffs and Appellants

## **TABLE OF CONTENTS**

STATEMENT OF JURISDICTION ............................................................. 1

STATEMENT OF ISSUES ON APPEAL ................................................... 2

STATEMENT OF THE CASE ................................................................... 3

I.    UNDERLYING INCIDENT. .......................................................... 3

II.   PROCEDURAL HISTORY OF LITIGATION. ............................. 10

SUMMARY OF ARGUMENT ................................................................ 16

ARGUMENT ............................................................................................ 19

I.    STANDARDS OF REVIEW ......................................................... 19

II.   THE DISTRICT COURT ERRED IN GRANTING SUMMARY
      JUDGMENT FOR APPELLEES ON APPELLANTS' FOURTH
      AMENDMENT CLAIMS FOR UNREASONABLE SEIZURE OF
      PERSON AND UNREASONABLE SEARCH OF PROPERTY. ............... 21

      A.   Under the Fourth Amendment, Officers Have a Duty to Conduct a
           Reasonable Investigation Before Making an Arrest, and May Not
           Ignore Evidence That Tends to Negate Probable Cause ........................ 21

      B.   Resolving All Factual Disputes in Appellants' Favor, Appellees
           Lacked Probable Cause to Arrest Appellant Browder for Violating
           Cal. Pen. Code §§ 470(a) or 273a(a), or Any Other Crime. .................. 23

           1.   Because Appellees Lacked Evidence of Ms. Browder's
                Specific Intent to Defraud Mr. Reed, Appellees Could Not
                Have Probable Cause to Arrest Her for Forgery Under Cal.
                Pen. Code § 470(a) ............................................................ 23

           2.   Because, Excluding Material Misrepresentations and
                Omissions, Appellees' Warrant Affidavit Failed to Establish
                Probable Cause to Believe That Appellant Browder
                Committed Forgery, the Warrant Was Invalid. ................................ 30

3. Because Appellant Browder's Disorganized Home Did Not Constitute A Serious and Well-Founded Risk of Great Bodily Harm Or Death to Her Children, Appellees Lacked Probable Cause to Believe She Committed the Crime of Child Endangerment Under Cal. Pen. Code § 273a. ...................................37

C. Because The District Court Dismissed Appellants' Fourth Amendment Claims for Unreasonable Seizure of Person and Unreasonable Search of Property on the Basis of Probable Cause, the District's Court's Ruling on These Claims Must be Reversed. ........43

III. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES ON APPELLANTS' CLAIM UNDER 42 U.S.C. § 1983 FOR MALICIOUS PROSECUTION. ...............44

IV. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES ON APPELLANTS' FOURTEENTH AMENDMENT CLAIM UNDER 42 U.S.C. § 1983 FOR INTERFERENCE WITH FAMILIAL ASSOCIATION. ...................46

V. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES ON APPELLANTS' FOURTEENTH AMENDMENT CLAIM UNDER 42 U.S.C. § 1983 FOR DELIBERATE FABRICATION OF EVIDENCE ..............................48

VI. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES ON APPELLANTS' FOURTH AMENDMENT CLAIM UNDER 42 U.S.C. § 1983 FOR EXCESSIVE FORCE. ...................................................................52

VII. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES ON APPELLANT'S CALIFORNIA STATE LAW CLAIMS..............................................................54

A. The District Court Erroneously Dismissed Appellants' False Arrest Claim. ....................................................................54

B. The District Court Erroneously Dismissed Appellants' Trespass Claim. .............................................................................55

CONCLUSION ......................................................................................56

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

*Devereaux v. Abbey*,
    263 F.3d 1070 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50

*Albright v. Oliver*,
    510 U.S. 266 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Allen v. City of Portland*,
    73 F.3d 232 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25, 29

*Anderson v. Creighton*,
    483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Anderson v. Liberty Lobby, Inc*,
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Arpin v. Santa Clara Valley Transp. Agency*,
    261 F.3d 912 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Beltran v. Santa Clara Cnty.*,
    389 F. App'x 679 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 35

*Benn v. Lambert*,
    283 F.3d 1040 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 36

*Blankenhorn v. City of Orange*,
    485 F.3d 463 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 27

*Boyd v. Benton County*,
    374 F.3d 773 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Broam v. Bogan*,
    320 F.3d 1023 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Brower v. County of Inyo*,
    489 U.S. 593 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Castro v. County of Los Angeles*,
833 F.3d 1060 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Catlin v. United States*,
324 U.S. 229 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Chappell v. Mandeville*,
706 F.3d 1052 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Chew v. Gates*,
27 F.3d 1432 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Cox v. English-Am. Underwriters*,
245 F.2d 330 (9th Cir. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Crowe v. County of San Diego*,
593 F.3d 841 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*David v. Kaulukukui*,
2022 WL 2299036 (9th Cir. June 27, 2022) . . . . . . . . . . . . . . . . . . . 47, 48

*Davis v. City of Las Vegas*,
478 F.3d 1048 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ewing v. City of Stockton*,
588 F.3d 1218 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Franks v. Delaware*,
438 U.S. 154 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

*Freeman v. Cate*,
2012 WL 6162518 (S.D. Cal. July 31, 2012) . . . . . . . . . . . . . . . . . . . . 12

*Fuller v. M.G. Jewelry*,
950 F.2d 1437 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Galbraith v. County of Santa Clara*,
307 F.3d 1119 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Gallagher v. City of Winlock, Wash.*,
287 F. App'x 568 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

iv

*Gantt v. City of L.A.*,
   717 F.3d 702 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 51

*Garcia v. County of Merced*,
   639 F.3d 1206 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gasho v. United States*,
   39 F.3d 1420 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 27

*George v. City of Long Beach*,
   973 F.2d 706 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Graham v. Connor*,
   490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Hardwick v. Vreeken*,
   844 F.3d 1112 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Hart v. Parks*,
   450 F.3d 1059 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hartman v. Moore*,
   547 U.S. 250 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Henderson for Epstein v. Mohave Cty., Ariz.*,
   54 F.3d 592 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 30

*Hervey v. Estes*,
   65 F.3d 784 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 31, 32, 34, 35

*Hopkins v. Bonvicino*,
   573 F.3d 752 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53, 54

*Illinois v. Gates*,
   462 U.S. 213 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Keates v. Koile*,
   883 F.3d 1228 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 48

*Kelson v. City of Springfield*,
   767 F.2d 651 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 48

v

*Kennedy v. Los Angeles Police Dep't*,
  901 F.2d 702 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

*Kirkpatrick v. County of Washoe*,
  843 F.3d 784 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) (en banc . . . . . . . . . . . . . . . . . . . . . 19, 40

*Manuel v. City of Joliet*,
  137 S. Ct. 911 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Maric v. Alvarado*,
  748 F. App'x 747 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . 39, 40, 43, 48

*Mendocino Envtl. Ctr. v. Mendocino County*,
  192 F.3d 1283 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Motley v. Parks*,
  383 F.3d 1058 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Motley v. Parks*,
  432 F.3d 1072 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Nichols v. City of Riverside*,
  775 F. App'x 845 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Nichols v. Macias*,
  695 F. App'x 291 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . 27, 28, 30, 34

*Olsen v. Idaho State Bd. of Medicine*,
  363 F.3d 916 (9th Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Peterson v. City of Plymouth*,
  60 F.3d 469 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28, 29

*Prantil v. State of Cal.*,
  843 F.2d 314 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Ramirez v. City of Buena Park*,
  560 F.3d 1012 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Reed v. Lieurance*,
  863 F.3d 1196 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 30, 34

*Rice v. Morehouse*,
  989 F.3d 1112 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Robinson v. Solano Cnty.*,
  278 F.3d 1007 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 15, 52, 53, 54

*Scott v. Harris*,
  550 U.S. 372 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sialoi v. San Diego*,
  823 F.3d 1223 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 29

*Smith v. City of Fontana*,
  818 F.2d 1411 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Smith v. City of Hemet*,
  394 F.3d 689 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Soo Park v. Thompson*,
  851 F.3d 910 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Stevens v. Rose*,
  298 F.3d 880 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

*Suzuki Motor Corp. v. Consumers Union, Inc.*,
  330 F.3d 1110 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Tennison v. City & County of San Francisco*,
  570 F.3d 1078 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 51

*Thomas v. Dillard*,
  818 F.3d 864 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 30

*Thomas v. Ponder*,
  611 F.3d 1144 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Torres v. City of Los Angeles*,
  548 F.3d 1197 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Troxel v. Granville*,
 530 U.S. 57 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*United States v. Garza*,
 980 F.2d 546 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 35

*United States v. King*,
 687 F.3d 1189 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*United States v. Landis*,
 726 F.2d 540 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Lopez*,
 482 F.3d 1067 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Ortiz–Hernandez*,
 427 F.3d 567 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Stanert*,
 762 F.2d 775 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

*Yousefian v. City of Glendale*,
 779 F.3d 1010 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## State Cases

*Allen v. McCoy*,
 , 135 Cal.App. 500 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Church of Christ in Hollywood v. Superior Court*,
 99 Cal.App.4th 1244 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Cornell v. City & Cty. of San Francisco*,
 17 Cal.App.5th 766 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*In re B.M.*,
 6 Cal.5th . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 43

*Mangini v. Aerojet–General Corp.*,
   230 Cal.App.3d 1125 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Molko v. Holy Spirit Ass'n for Unification of World Christianity*,
   46 Cal.3d 1092 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Ogborn v. City of Lancaster*,
   101 Cal.App.4th 448 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Bernal*,
   42 Cal.App.5th 1160 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43

*People v. Brown*,
   19 Cal.App.3d 1013 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 43

*People v. Burton*,
   143 Cal.App.4th 447 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*People v. Geibel*,
   93 Cal.App.2d 147 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*People v. Harris*,
   239 Cal.App.2d 393 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 43

*People v. Odom*,
   226 Cal.App.3d 1028 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 43

*People v. Pugh*,
   104 Cal.App.4th 66 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 27

*People v. Sesslin*,
   68 Cal.2d 418 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*People v. Smith*,
   35 Cal.3d 798 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*People v. Sutton*,
   65 Cal.App.3d 341 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 43

*People v. Turner*,
   22 Cal.App.3d 174 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*People v. Wilson*,
   138 Cal.App.4th 1197 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 40, 41

*Sullivan* v. *County of Los Angeles*,
   12 Cal.3d 710 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 45

## Federal Statutes

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

U.S. Const. amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## State Statutes

Cal. Gov't Code § 821.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cal. Pen. Code § 273a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

Cal. Pen. Code § 273a(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

Cal. Pen. Code § 273a(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39, 41, 42

Cal. Pen. Code § 470 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 23, 30

Cal. Pen. Code § 273(a)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## Federal Rules

Fed. R. App. P. 4(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 4(a)(7)(A)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 40

## **Other Authorities**

CACI No. 2000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

CALCRIM No. 821 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CALCRIM No. 1900 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 27

## STATEMENT OF JURISDICTION

Appellants Alaisha Tyshari Browder, individually, and Doristeen Coleman,[1] as guardian ad litem for minors D.K.A. and M.K.T. (hereinafter "Appellants") appeal an August 12, 2022 order of the United States District Court for the Central District of California granting Motions for Summary Judgment by Appellees San Bernardino County, Jeremiah Cornett, and Thomas Boydston on Appellants' federal claims and supplemental state law claims. (*See* Vol. 1 of Appellants' Excerpts of Record [hereinafter "1-ER"] at 1-18.)

The District Court had original jurisdiction over Appellants' federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367. (*See* 6-ER-1159—1160.)

The Court entered judgment on August 12, 2022. (2-ER-20—21.) Thus, the judgment became final and appealable on that date. Fed. R. App. P. 4(a)(7)(A)(ii); *Catlin v. United States*, 324 U.S. 229, 233 (1945). Appellants filed their timely Notice of Appeal on September 9, 2022. (6-ER-1187—1209.) *See* Fed. R. App. P. 4(a)(1). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

---

[1] (*See* 6-ER-1186 [order appointing Doristeen Coleman as guardian ad litem for minor plaintiffs D.K.A. and M.K.T.].)

1

## <u>STATEMENT OF ISSUES ON APPEAL</u>

1.      Under California and federal law, does an officer have probable cause to arrest a person for forgery where that person signs the name of a co-signer to extend a residential lease, but that same person also claims to have obtained consent from the co-signer, and the co-signer is an ex-boyfriend who has repeatedly lied to officers and has an apparent financial interest in accusing his ex-girlfriend of forgery?

2.      Under California and federal law, does an officer have probable cause to arrest a person for child endangerment based upon the condition of their home where that person's home is disorganized due to them being in the process of moving, and the allegedly dangerous condition consists of the presence of butter knives scattered about the house?

3.      Under the Fourteenth Amendment, where an officer plants butter knives throughout someone's house, then calls them "steak knives" in his police report to justify arresting that person for child endangerment, does that officer's planting and mischaracterization of evidence amount to deliberate fabrication of evidence?

4.      Under the Fourteenth Amendment, where an officer lies and embellishes facts about the state of a parent's home in order to cause that person's children to be taken away by child protective services, do the officer's actions violate the parent's and children's Fourteenth Amendment right to familial association?

## STATEMENT OF THE CASE

### I.    UNDERLYING INCIDENT.

Appellant Alaisha BROWDER is the natural mother of minors D.K.A and M.K.T, who are also Appellants in this action. (3-ER-369 ¶¶ 1-2.) At the time of the events described below, D.K.A. and M.K.T. were seven and eleven years old, respectively. (*Id*.) Ms. Browder also has an ex-boyfriend named Dejuan Reed. Mr. Reed is not a party to this action. (*Id*. ¶ 3.)

On April 13, 2015, Ms. Browder and Mr. Reed both co-signed a lease agreement for an apartment at 15450 Nisqualli Road, #5108, Victorville, California. (2-ER-205—211, 228—231; 3-ER-369 ¶¶ 5-6.)) Ms. Browder, Mr. Reed, D.K.A., and M.K.T. all resided there. On or about March 11, 2017, Ms. Browder signed an extension of that lease for another year. (2-ER-212—227; 3-ER-369 ¶ 7.) Ms. Browder also signed that lease for Dejuan Reed, with his permission and at his direction and in the presence of the landlord. (*Id*.)

While Ms. Browder was living with Mr. Reed, he stole $4,500.00 from her by taking her money for an earnest money deposit, then appropriating it for himself. Mr. Reed then left Ms. Browder. Unbeknownst to Ms. Browder, Mr. Reed had been living a "double life," living with another woman and her children in Los Angeles County. Mr. Reed's theft of $4,500.00 caused Ms. Browder some degree

of financial peril, which ultimately resulted in her being evicted, along with D.K.A. and M.K.T. (3-ER-369 ¶¶ 8-10.)

The landlord sued Ms. Browder and Mr. Reed for $2,925.00 in unpaid rent. When Reed received a copy of that lawsuit, he contacted the law firm representing the landlord and told them that he never lived at the Nisqualli Road apartment, that he never signed any lease with the Apartments (either the original lease or the renewal), that he has never lived in Victorville and that he has had no contacts at all with anyone in Victorville. All of these representations by Mr. Reed were false. (3-ER-370 ¶ 11.)

Ms. Browder subsequently moved into a new address, also in Victorville, California. (*Id.* ¶ 12.) On or about September 4, 2018, Mr. Reed contacted the Los Angeles County Sheriff's Department ("LASD") and alleged that Ms. Browder forged his signature on the lease renewal agreement without his permission. Mr. Reed falsely stated that he "never lived at the [Nisqualli] address," that he not "ever sign a lease for himself anyone else" at that address, and that he had no "ties to Victorville, CA." (3-ER-351—354; 370 ¶ 13.) Mr. Reed also told LASD investigators that the mail at his Palmdale address had not been tampered with. Based on Mr. Reed's false allegations, LASD Detectives contacted San Bernardino County Sheriff's Department ("SBSD") Detectives to investigate those allegations. (3-ER-370 ¶ 14.)

Appellee SBSD deputy sheriff Jeremiah Cornett investigated Mr. Reed's allegations and discovered, contrary Mr. Reed's statements to LASD investigators, (1) that Mr. Reed knew Ms. Browder, and that he lived with Ms. Browder at the Nisqualli address, and (2) that Mr. Reed had in fact signed a lease for the Nisqualli address. (2-ER-52—67; 239—243.) Cornett spoke with Mr. Reed himself, and Mr. Reed contradicted almost every aspect of the statement he had given to the LASD. (*Id*.) In particular, Mr. Reed confirmed that he did in-fact sign a lease agreement with me for the Nisqualli apartment. Mr. Reed changed his story to say that he did not consent to the lease extension. (*Id*.) Mr. Reed also told Cornett that he never lived with Ms. Browder at the Nisqualli address—a representation that Cornett ultimately knew or should have known was false. (3-ER-370—371 ¶¶ 14-16.)

Appellee Cornett spoke with the landlord for the Nisqualli address, who confirmed that Mr. Reed had in-fact lived that address and was a co-signer on the application for the lease. (2-ER-53—62, 205—211, 228—231, 239—240.) Cornett attempted to call Ms. Browder and was at first unsuccessful. Ms. Browder returned Cornett's phone call but was also unsuccessful. After some back-and-forth phone calls, Ms. Browder eventually spoke with Appellee Cornett on the telephone Regarding Mr. Reed's Forgery Allegations. She Informed Cornett that Dejuan Reed had lived with her at the Nisqualli address. Cornett and Browder attempted to tentatively schedule an in-person meeting. However, at that time they were unable

5

to do so. Ms. Browder was busy with work so they agreed to get in contact at a different time. (3-ER-371 ¶¶ 17-19.)

On November 6, 2018, Cornett applied for and obtained a search warrant for Ms. Browder's new apartment in Victorville to look for evidence of forgery. (2-ER-25—29.) However, Cornett omitted from his warrant affidavit the fact that Mr. Reed, a co-signer on the original lease application, had lived at the address in the years prior, and that Reed contradicted himself or lied in numerous statements he made to both LASD and SBSD. (*Id.*) Cornett also omitted from his warrant affidavit the substance of his telephone conversation with Ms. Browder in which she explained her involvement with Mr. Reed. (3-ER-371 ¶ 20.)

After the warrant issued, Cornett and Appellee SBSD Thomas Steven Boydston executed it on the same day. (2-ER-25—29, 232—245.) When Cornett and Boydston executed their search warrant, Ms. Browder happened to be in the middle of moving to a new address. It was obvious that she was in the process of moving, because her personal items were packed up throughout the house, and there was a U-Haul moving truck parked in front of her home. She later directly informed Cornett and Boydston that she was in the process of moving. Although the condition of her home on that day could be called "messy" or "disorganized" as a result of the moving process, it was not unsafe or unsanitary. Ordinarily, Ms. Browder keeps a healthy, safe, and reasonably organized home for her children.

Her children have never been harmed by the condition of her home, either before or after the incident of November 6, 2018. (3-ER-371—372 ¶¶ 21-23.)

Cornett and Boydston detained Browder, D.K.A., and M.K.T. at gunpoint during the search. (2-ER-355.) Ms. Browder was terrified, both for herself and for her children. Neither Ms. Browder nor her children were armed or acting in a threatening manner whatsoever. During Cornett and Boydston's search of Browder's home, they found numerous documents showing that Mr. Reed had lived with Browder at her previous Nisqualli Road address. (2-ER-25—29, 232—245.) She again informed Cornett and Boydston of her relationship to Mr. Reed, including the fact that he once lived with her at the Nisqualli Road address. She also explained that Mr. Reed had explicitly consented to her signing his name to extend the lease. (3-ER-372—373 ¶¶ 26-29.)

Ms. Browder informed Appellees Cornett and Boydston that she was in the process of moving. She had boxed up her personal items including food which she intended to move to her new residence. She did not have "rotted food on the floor" of her apartment, and there were no unsafe or unsanitary conditions as a result of her keeping of food. All of her food was packed, and she had discarded unwanted food in the appropriate waste bins. Nor had Ms. Browder left "steak knives" all "throughout the residence." (2-ER-248.) Her eating utensils were packed away, ready to be moved. Later, apparently at the hands of Appellees, there were some

"butter knives" which were strewn about randomly. (2-ER-248; 3-ER-372 ¶¶ 24-25, 35.)

Nevertheless, Appellees Cornett and Boydston arrested Browder, allegedly for felony forgery, and for felony child endangerment. (2-ER-232—245, 246—247.) Upon arresting Browder, Appellees Cornett and Boydston took D.K.A. and M.K.T. away from their mother and placed them in the custody of Child Protective Services. (2-ER-232—245.) Ms. Browder was eventually released on $100,000 bail, which she was able to post at a cost of $10,000. (2-ER-267—268.) D.K.A. and M.K.T. were ultimately held in the custody Child Protective Services for 30 days. Ms. Browder found this experience to be emotionally devastating—she cried every day thinking about where her children were, and if she would ever see them again. (3-ER-373—374 ¶¶ 32-37.)

Ultimately, the San Bernardino County District Attorney's Office prosecuted Ms. Browder under Cal. Penal Code § 273(a)(b) (willful cruelty to child via exposing to unhealthy / dangerous conditions). (2-ER-249—266.) She was never charged with forgery. At trial, Appellee Cornett was forced to admit the numerous false and misleading representations he had made in order to obtain Ms. Browder's prosecution, especially those concerning the condition of her apartment and any "child endangerment" it created. (2-ER-146—148, 158—160, 170, 173—178.) At the end of the Prosecution's case, the defense made a motion for mistrial because

8

the Prosecutor repeatedly mentioned matters that he was ordered not to. (2-ER-170, 188—189.) However, rather than grant a mistrial on those grounds, the Court ruled as follows:

> I want to make sure that the record is clear that I do not find counsel for the People having committed any intentional error. Your conduct is, in my view, is very appropriate in this case. If you commit some errors, not because you intended to do that.
>
> In addition to that, based on the state of the evidence at this time, the Court grant the motion to dismiss the case against the defendant. Okay. Case dismiss[ed].

(2-ER-188—189.)

As a result of Appellees' actions, Ms. Browder experienced great mental and emotional distress. (2-ER-203—204.) The experience of being arrested at gunpoint with her children, falsely accused of a crime, then separated from her children for an entire month brought a heavy sadness to her heart. It caused her family to suffer traumatic memories which will haunt them for the rest of their lives. Also, as a result of the events described above, Ms. Browder lost her job with Broadpath, a medical insurance management company. (2-ER-201—202.) Moreover, as a result of the events described above, a house that she was in the process of purchasing fell out of escrow. Consequently, she was homeless for a period several months (3-ER-374—375 ¶¶ 42-45.)

## II.   PROCEDURAL HISTORY OF LITIGATION.

On December 2, 2019, Appellants filed suit against Appellees in United States District Court for the Central District of California.[2] (*See* 6-ER-1213 ¶ 1.) The operative complaint, Appellants' First Amended Complaint ("FAC"), alleges eight causes of action under federal and state law: (1) unreasonable seizure of person under the Fourth Amendment and 42 U.S.C. § 1983; (2) unreasonable search and seizure of a private residence under the Fourth Amendment and 42 U.S.C. § 1983; (3) malicious prosecution under 42 U.S.C. § 1983; (4) deliberate fabrication of evidence under the Fourteenth Amendment and 42 U.S.C. § 1983; (5) interference with parent-child relationship under the Fourteenth Amendment and 42 U.S.C. § 1983; (6) false arrest / imprisonment under California law; (7) invasion of privacy / trespass under California law; and (8) unreasonable force under the Fourth Amendment and 42 U.S.C. § 1983. (6-ER-1158—1187.) On April 26, 2021, Appellees filed their First Amended Answer. (6-ER-1132—1157.)

On April 18, 2022 Appellees filed their motions for summary judgment. (3-ER-378—520; 4-ER-522—693, 4-ER-695—959; 6-ER-962—1131.) Appellee Thomas Boydston filed his own motion for summary judgment. (*Id.*) Appellants filed their opposition papers on July 6, 2022. (2-ER-79—312; 3-ER-314—376.)

---

[2] Because D.K.A. and M.K.T. were minors, the Court appointed Doristeen Coleman as guardian ad litem. (*See* 6-ER-1186.)

On August 12, 2022, the District Court granted Appellees' motions for
summary judgment. (1-ER-2—18.) The Court addresses Appellants' Fourth
Amendment claim for unreasonable search of residence through the rubric of
"judicial deception." (1-ER-9.) In granting Appellees' motion, the Court wrote the
following:

> Cornett's alleged omitted statements are not material because "after
> amending the warrant to omit the alleged misrepresentations and add
> the alleged omission[s], probable cause still exists." *Beltran v. Santa
> Clara Cnty.*, 389 F. App'x 679, 681 (9th Cir. 2010) (citing *Ewing*, 588
> F.3d at 1124). Probable cause exists here—independent of the alleged
> omissions—because the affidavit explains that, based on Cornett's
> initial investigation, Browder asked Reed if he would sign the 2016
> Lease; Reed said he would not; Reed said he did not give her consent
> to sign the 2016 Lease; and Cornett noticed that the signature under
> Reed's name on the 2016 Lease was different from the one on the
> 2015 Lease. (See Warrant and Affidavit at 5; County SUF ¶¶ 9- 11.);
> Ewing, 588 F.3d at 1226 ("The omission of facts rises to the level of
> misrepresentation only if the omitted facts cast doubt on the existence
> of probable cause."). Furthermore, the omitted statements concerning
> Reed's prior cohabitation with Browder, Browder's giving Reed a
> check to buy a home, and Reed being a gang member are not material
> because they do not "render[] an otherwise truthful statement to be
> false or misleading." *See Beltran*, 389 F. App'x at 681. Indeed, a
> warrant affidavit need not include "any information a plaintiff deems
> favorable to his or her cause." *Id*. Moreover, even if the alleged
> omitted statements were material, Plaintiffs fail to demonstrate that
> Cornett "intentionally or recklessly" omitted them; for example, the
> undisputed facts establish that not until Cornett executed the warrant

11

did Browder claim she had Reed's consent to sign his name. (*See* County SUF ¶¶ 12, 29-31.)

(1-ER-9—10.) Thus the Court granted summary judgment on Appellants' Fourth Amendment claim for unreasonable search of residence.

With regard to Appellants' Fourth Amendment claim for unreasonable seizure of person, and Appellants' California false arrest claim, the Court wrote that "the undisputed facts establish that Cornett had probable cause to arrest Browder for forgery under Cal. Pen. Code § 470." (1-ER-11.) The Court reasoned that "Cornett had probable cause to arrest Browder for forgery because . . . Reed told Cornett that he did not give consent to Browder to sign the 2016 Lease," and because "Cornett noticed that Reed's signatures from the 2015 Lease and 2016 Lease did not match the signature." (*Id.*) The Court accepted that "while officials searched Browder's residence pursuant to the warrant, they found documents with Reed's name," even though that fact supports Appellant Browder's contention that Mr. Reed was living at that address. (*Id.*)

The Court also held that "the undisputed facts establish that Cornett had probable cause to arrest Browder for child endangerment under Cal. Pen. Code § 273a(a)." (1-ER-12.) The Court reasoned that:

 "Under California law, extremely filthy and unsanitary living conditions may constitute child endangerment." *Freeman v. Cate*, 2012 WL 6162518, at *34 (S.D. Cal. July 31, 2012), report and recommendation adopted, 2012 WL 6161946 (S.D. Cal. Dec. 11, 2012), aff'd, 705 F. App'x 513 (9th Cir. 2017). Here, while searching

Browder's residence pursuant to a warrant, Cornett noticed rotten food on the floor, a trash bin filled with trash and rotten food, knives and other eating utensils throughout the residence, knives between couch cushions, a nearly empty fridge, and boxes and bags scattered throughout the residence. (County SUF ¶¶ 33-35; Boydston SUF Reply ¶ 39; see Residence Photos (confirming the residence's state of disarray).) Cornett also smelled a foul odor, which he assumed came from the rotting food. (Boydston SUF Reply ¶ 40; see County SUF ¶ 35.) From these conditions, Cornett determined the residence was uninhabitable and posed a safety and health risk to Browder's children. (County SUF ¶ 36.) **Browder herself told Cornett the residence was uninhabitable, though she claimed it was because she was in the process of moving due to her eviction. (*Id.* ¶¶ 37, 38, 40.) Even assuming that were true, the uninhabitable state of the residence provided probable cause for Cornett to suspect "a probability or substantial chance" that the living conditions endangered the children's "person or health."** *See Illinois v. Gates*, 462 U.S. 213, 245 n.13 (1983)

(1-ER-13.) Thus, the Court granted summary judgment on Appellants' Fourth

Amendment and California state law false arrest claims.

With respect to Appellants' Fourteenth Amendment claim for interference

with familial association, the Court found that Appellants were justified in

removing Appellants' children essentially on the basis of Browder's arrest: "after

Cornett arrested Browder, her children (ages seven and eleven) would have been

left alone at an uninhabitable home for an indeterminate amount of time. . . .

Under these circumstances, the Court concludes that Cornett had reasonable cause

to believe that the children would be in imminent danger of seriously bodily harm

if left by themselves at an uninhabitable home for an indeterminate amount of

time. Cornett thus permissibly removed the children from their home." (1-ER-14.)

13

With respect to Appellants' malicious prosecution claim, the District Court dismissed it on the basis of probable cause: "As explained earlier, (1) probable cause supported Browder's arrest for forgery . . . and (2) probable cause supported Browder's arrest for child endangerment. . . . Because "probable cause is an absolute defense to malicious prosecution," the malicious-prosecution claim fails[.]" (1-ER-15—16.)

With regard to Appellants' claim for deliberate fabrication of evidence, the Court wrote the following:

> Here, Plaintiffs allege that Cornett and Boydston deliberately fabricated the following: (1) false statements in the police report about the condition of Browder's residence and about knives in the cushions; (2) false testimony in Browder's criminal trial about the residence's condition and knives in the cushions; (3) photographing the residence's condition; and (4) withholding information from the prosecution that Browder was moving, had a U-Haul truck, and had keys to the truck. (FAC ¶¶ 101, 102.) With respect to Cornett, no evidence supports the allegation that he gave false testimony at trial or fabricated the photos of Browder's evidence. (*See* County SUF ¶ 59; *see also* Opposition at 19-21 (arguing instead that Cornett admitted at trial to making false and misleading representations in his police report).) **It is true that Cornett's police report wrongly stated that "steak knives" were found throughout Browder's residence—in reality, the knives were "butter" knives**. ("Trial Transcript," Ex. 3 to Hands Decl., Dkt. No. 79-3, at 77.) **At minimum that is a careless inaccuracy.** But "in an investigative report," "[m]ere carelessness is insufficient" to establish that a falsification was deliberate. *Spencer*, 857 F.3d at 798 (9th Cir. 2017). It is possible, of course, that Cornett's error was more than just careless. Yet even then, Plaintiffs fail to establish that Cornett "knew or should have known that Browder was innocent," *Bradford*, 803 F.3d at 386; instead, as explained earlier, Browder had probable cause— independent of the nature of the

14

knives—to believe that the home was uninhabitable. (See, e.g., County SUF ¶ 36.)

(1-ER-14—15 [emphases added].)

With regard to Appellants' Fourth Amendment excessive force claim, the Court found that the force was "reasonable" because Appellees "entered the residence with their guns drawn to conduct a protective sweep." (1-ER-16—17.) The Court distinguished *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1013–1014 (9th Cir. 2002) as "inapposite" because "there, officers pointed their guns from close range at a calm man on the street—not through a warrant-backed protective sweep of a home, like here." (1-ER-16—17.)

Lastly, the Court granted summary judgment on Appellants' California state law trespass claim on the basis of the warrant, which the Court previously held was valid: "as explained earlier, Cornett's search warrant into Browder's home was valid. The validity of the warrant dooms this claim." (1-ER-17—18 [citing *Ogborn v. City of Lancaster*, 101 Cal. App. 4th 448, 462 (2002) and Cal. Gov't Code § 821.8].)

The District Court entered judgment and dismissed the case in its entirety on the same day. (2-ER-19—21.) This appeal followed: (6-ER-1187—1209.)

## SUMMARY OF ARGUMENT

The District Court erred in granting Appellees' motion under Fed. R. Civ. P. 56 for summary judgment on Appellants' Fourth Amendment claims for unreasonable seizure of person and unreasonable search and seizure of property, and on Appellants' California state law claims for false arrest and trespass to residence, because Appellees lacked probable cause to arrest Appellant Browder for any crime. Appellees lacked probable cause to arrest Appellant for child endangerment because the state of Appellant Browder's disorganized house did not remotely evince a violation of Cal. Pen. Code § 273a(a). Appellees lacked probable cause to arrest Appellant Browder for forgery under Pen. Code § 470(a) because Appellees were not at liberty to ignore facts suggesting that Appellant Browder had consent and otherwise lacked the requisite specific intent to defraud when she signed her boyfriend's name to extend a lease on which he was already a signatory. Appellants presented sufficient evidence that reasonable jury could find that Appellees arrested Appellant Browder and searched her home without probable cause.

The Court similarly erred in dismissing Appellants' malicious prosecution claim on grounds that Appellees had probable cause to arrest Appellant Browder for forgery or child endangerment. Appellants presented sufficient evidence for a reasonable jury to find that Appellees lacked probable cause when they procured

16

Appellant Browder's prosecution, and that they did so maliciously, in violation of her Constitutional rights.

The Court also erred in its finding that Appellees did not engage in judicial deception by omitting or misrepresenting material facts in their affidavit in support of an arrest warrant. If Appellees' omissions and misrepresentations were excluded from the affidavit, no reasonable neutral magistrate would find that the facts alleged establish probable cause to believe Appellant Browder committed the crime of forgery. Appellants presented sufficient evidence such that a reasonable jury could conclude that Appellees' omissions were intentional, or at least reckless, and thus actionable under the Fourth Amendment.

The Court likewise erred in dismissing Appellants' Fourteenth Amendment claim for interference with a parent-child relationship based on its finding that Appellees reasonably believed minor Plaintiffs-Appellants faced an imminent danger of seriously bodily harm justifying their removal from Appellant Browder's custody. Appellants presented sufficient evidence for a reasonable jury to conclude that the state of Appellants' disorganized household did not constitute a violation of Cal. Pen. Code § 273a(a), and did not otherwise present reasonable grounds for Appellees to remove Appellant Browder's children from her custody on suspicion of "child endangerment."

The Court erred in dismissing Appellants' Fourteenth Amendment claim for deliberate fabrication of evidence based on its finding that Appellees' deliberate falsehoods were mere "careless inaccuracy," and in otherwise excusing Appellees' repeated acts of dishonesty. Appellants presented sufficient evidence that a reasonable jury could find that Appellees' falsehoods were deliberate, and thus actionable under the Fourteenth Amendment.

The Court erred in dismissing Appellants' Fourth Amendment excessive force claim, and in otherwise excusing Appellees' pointing of guns at Appellees at close range. Appellants presented evidence that they were compliant and apparently unarmed such that a reasonable jury could find that Appellees' use of firearms was unreasonable under the circumstances.

Lastly, the Court erred in dismissing Appellants' state law trespass claim on grounds that the warrant was valid. Appellants presented sufficient evidence for a reasonable jury to find that Appellees procured the warrant by recklessly omitting and misstating facts in their affidavit, and thus that Appellees' encroachment into their property was not justified by a valid warrant.

Accordingly, this Court should REVERSE the District Court's granting of Appellees' motion for summary judgment on Appellants' claims and REMAND this case for further proceedings.

## ARGUMENT

## I.   STANDARDS OF REVIEW.

A district court's grant of summary judgment in an action under 42 U.S.C. section 1983 is reviewed de novo. *See Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011); *Davis v. City of Las Vegas*, 478 F.3d 1048, 1053 (9th Cir. 2007). Whether a plaintiff's Constitutional rights were "clearly established" for purposes of qualified immunity is a question of law reviewed de novo.  *See Boyd v. Benton County*, 374 F.3d 773, 778 (9th Cir. 2004). "In determining whether a government official should be granted qualified immunity, [the Court] view[s] the facts in the light most favorable to the injured party." *Chappell v. Mandeville*, 706 F.3d 1052, 1057 (9th Cir. 2013).

In reviewing a grant of summary judgment, the appellate court's review is governed by the same standard used by the trial court under Fed. R. Civ. P. 56(c). *See Suzuki Motor Corp. v. Consumers Union, Inc*., 330 F.3d 1110, 1131 (9th Cir. 2003). The Court must (1) view the evidence in the light most favorable to the non-moving party; (2) determine whether any genuine issues of material fact exist that would preclude summary judgment; and (3) determine whether the district court correctly applied substantive law. *See Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir.2004); *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

This Court may reverse a district court's grant of summary judgment if the movant failed to show "that there [was] no genuine dispute as to *any* material fact" such that "the movant [was] entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (emphasis added). An issue of material fact is "genuine" if the non-movant presents "sufficient evidence for a reasonable jury to return a verdict" in his favor. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

Summary judgment "should not be used as a substitute for trial on the facts," and even if the trial judge finds the non-movant's evidence unworthy of belief, the law "does not endow him with authority to take the place of the jury and decide hotly contested issues of fact." *Cox v. English-Am. Underwriters*, 245 F.2d 330, 333 (9th Cir. 1957). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 249-255 (1986). However, where recorded evidence blatantly contradicts a party's version of events such that no reasonable jury could believe it, "a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380-381 (2007).

**II.  THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES ON APPELLANTS' FOURTH AMENDMENT CLAIMS FOR UNREASONABLE SEIZURE OF PERSON AND UNREASONABLE SEARCH OF PROPERTY.**

**A. <u>Under the Fourth Amendment, Officers Have a Duty to Conduct a Reasonable Investigation Before Making an Arrest, and May Not Ignore Evidence That Tends to Negate Probable Cause.</u>**

Under the Fourth Amendment, all arrests must be supported by "probable cause." U.S. Const. amend. IV. Probable cause exists when "the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed a crime." *Hart v. Parks*, 450 F.3d 1059, 1065 (9th Cir. 2006).

"[A]ll officers . . . have an ongoing duty to make appropriate inquiries regarding the facts received or to further investigate if sufficient details are relayed." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1212 (9th Cir. 2008). This "include[s] a duty to conduct a reasonable investigation" before determining that probable cause exists for a warrantless arrest. *See Motley v. Parks*, 383 F.3d 1058, 1068 (9th Cir. 2004), *on reh'g en banc*, 432 F.3d 1072 (9th Cir. 2005); *Mendocino Envtl. Ctr. v. Mendocino County,* 192 F.3d 1283, 1293 n. 16 (9th Cir. 1999). "In establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." *Arpin v. Santa*

21

*Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (citing *Fuller v.*

*M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991)).” Police officers have “a duty

to conduct an investigation into the basis of the witness’ report,” and any arrest

based upon a witness report may not be based upon “insufficient information” to

believe that the arrestee had committed a crime. *Fuller*, 950 F.2d at 1444-1445;

*Allen v. City of Portland*, 73 F.3d 232, 237-238 (9th Cir. 1995).

Even if an officer arguably has probable cause, “additional information

obtained at the scene may indicate that there is less than a fair probability that the

defendant has committed or is committing a crime,” and “[i]n such cases,

execution of the arrest or continuation of the arrest is illegal.” *United States v.*

*Lopez*, 482 F.3d 1067, 1073 (9th Cir. 2007). Officers “may not disregard facts

tending to dissipate probable cause.” *Sialoi v. San Diego*, 823 F.3d 1223, 1232 (9th

Cir. 2016); *United States v. Ortiz–Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005);

*Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009). While an

officer has no duty to investigate further or look for exculpatory evidence once

probable cause has been established, “an officer may not ignore exculpatory

evidence that would ‘negate a finding of probable cause.’” *Yousefian v. City of*

*Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) (quoting *Broam v. Bogan,* 320 F.3d

1023, 1032 (9th Cir. 2003)). Put differently, “Officers may not cherry pick facts to

justify [a] serious Fourth Amendment intrusion,” or act “deaf and blind” to

information "any prudent person would have taken into account." *Thomas v. Dillard*, 818 F.3d 864, 877 (9th Cir. 2016); *Henderson for Epstein v. Mohave Cty., Ariz.*, 54 F.3d 592, 593-595 (9th Cir. 1995). This Court has denied qualified immunity in cases where officers "had put in their faces the evidence any prudent person would have taken into account" because "[r]easonable police officers would not have been deaf and blind" to circumstances indicating "that they were wrong." *Henderson*, 54 F.3d at 593-595.

### B. Resolving All Factual Disputes in Appellants' Favor, Appellees Lacked Probable Cause to Arrest Appellant Browder for Violating Cal. Pen. Code §§ 470(a) or 273a(a), or Any Other Crime.

### 1. Because Appellees Lacked Evidence of Ms. Browder's Specific Intent to Defraud Mr. Reed, Appellees Could Not Have Probable Cause to Arrest Her for Forgery Under Cal. Pen. Code § 470(a).

"Every person who, with the intent to defraud, knowing that he or she has no authority to do so, signs the name of another person or of a fictitious person to any [contract] is guilty of forgery." Cal. Pen. Code § 470(a). The elements of forgery under Cal. Pen. Code § 470(a) are:

1. The defendant signed someone else's name to a contract;

2. The defendant did not have authority to sign that name;

3. The defendant knew that she did not have that authority;

     AND

4. When the defendant signed the document, she intended to defraud.

23

*See* CALCRIM No. 1900 (brackets and parentheses excluded; language modified as relevant to this case). Forgery is a "specific intent" crime for which conviction "requires the person utter, publish or pass [the allegedly forged document] with the specific intent to defraud another person."[3] *People v. Pugh*, 104 Cal.App.4th 66, 72 (2002); *People v. Turner*, 22 Cal.App.3d 174, 184 (1971); *People v. Geibel*, 93 Cal.App.2d 147, 175 (1949); *Prantil v. State of Cal.*, 843 F.2d 314, 316 n.3 (9th Cir. 1988). "[W]hen specific intent is a required element of the offense, the arresting officer *must have* probable cause for that element in order to reasonably believe that a crime has occurred." *Blankenhorn v. City of Orange*, 485 F.3d 463, 472 (9th Cir. 2007) (emphases added)

This Court's probable cause requirement for specific intent crimes is long-standing, clearly established law in the realm of 42 U.S.C. § 1983. *See Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994); *Reed v. Lieurance*, 863 F.3d 1196, 1205–07 (9th Cir. 2017). This area of law is particularly well-established in the realm of arrests for crimes involving "intent to defraud," where allegations of

---

[3] Specific "intent to defraud is an intent to deceive another person for the purpose of gaining a material advantage over that person or to induce that person to part with property or alter that person's position by some false statement or false representation of fact, wrongful concealment or suppression of the truth or by any artifice or act designed to deceive." *People v. Pugh*, 104 Cal.App.4th 66, 72 (2002).

criminal conduct frequently mask underlying civil disputes.[4] *See Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1995), *as amended* (Jan. 17, 1996); *Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 706 (9th Cir. 1989); *Stevens v. Rose*, 298 F.3d 880, 883–84 (9th Cir. 2002); In *Kennedy*, "two women[, Kennedy and Houghton,] had entered into a two-year lease," but Houghton left "without prior warning," and left Kennedy to pay "a total of $694 for [Houghton's] portion of rent and utilities and for bounced checks." *Kennedy*, 901 F.2d at 704. When Kennedy kept some of Houghton's property as security on the unpaid $694, Kennedy called the police and reported it as a theft. *Id*. Responding officers arrested then Kennedy for theft. *Id*. In affirming a judgment against the officers under 42 U.S.C. § 1983, this Court noted that:

> [T]here was no reasonable basis from which anyone could believe that Kennedy had the specific intent permanently to deprive Houghton of her property. On the contrary, **the jury quite properly concluded that a prudent person would not have believed that Kennedy, who was entangled in an ordinary neighborhood dispute, had committed grand theft**. . . . There simply was no evidence to indicate any other intent. Accordingly, the district court did not err in denying the appellants' motions for a directed verdict on qualified immunity

*Kennedy*, 901 F.2d at 706 (emphases added).

---

[4] "By its definition, probable cause can only exist in relation to criminal conduct. It follows that civil disputes cannot give rise to probable cause." *Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir. 1995), *as amended* (Jan. 17, 1996).

In *Stevens*, this Court denied qualified immunity where an officer arrested a plaintiff for a "violation of Nevada's forgery statute" based on a "dispute over the ownership of an automobile," because the officer "knew that the dispute was civil, not criminal." *Stevens v. Rose*, 298 F.3d 880, 882-84 (9th Cir. 2002). This Court relied on *Peterson v. City of Plymouth,* 60 F.3d 469 (8th Cir. 1995), which noted that "Knowledge of [a person's] reasonable and actual claim of right put [the officer] on notice that the dispute was a civil matter *not involving criminal intent*." *Id*. at 883 (citing *Peterson,* 60 F.3d at 476–77 [emphases added]).

In *Gallagher*, this Court applied *Gasho* and *Stevens* to reverse summary judgment on a Fourth Amendment claim for an arrest based on a dispute over a residential lease agreement. *See Gallagher v. City of Winlock, Wash.*, 287 F. App'x 568, 573 (9th Cir. 2008) ("a jury could find that Officer Patrick's encounter with Kirby . . . during which Kirby specifically told Patrick that he 'paid the rent' and offered to show him a lease—and the police interactions with Taylor had put the officers on notice that 'they were dealing, at worst, with some sort of ... property dispute' "). Later, this Court in *Nichols I* and *Nichols II* ("*Nichols*," collectively) relied on cases such as *Kennedy*, *Stevens*, *Allen*, and *Reed* to reverse a grant of summary judgment and deny qualified immunity for officers who arrested two brothers for theft, even though "[a]t most, there was a dispute about what [a] rental

contract allowed."[5] *Nichols v. Macias*, 695 F. App'x 291, 292–93 (9th Cir. 2017) ("*Nichols I*"); *Nichols v. City of Riverside*, 775 F. App'x 845–846 (9th Cir. 2019) ("*Nichols II*"), *cert. denied*, 140 S. Ct. 2669 (2020).

Here, as with officers in *Kennedy, Stevens, Gallagher* and *Nichols*, Appellees lacked evidence of Ms. Browder's specific "intent to defraud," and at most had notice that they were dealing with "some sort of property dispute." *Gallagher*, 287 F.App'x at 573; *Nichols*, 695 F. App'x at 292–93; *Stevens*, 298 F.3d at 882-84; *Kennedy*, 901 F.2d at 706. Because forgery is a "specific intent" crime, Appellees needed probable cause—more than a token scintilla of evidence—suggesting that Ms. Browder "intended to defraud"; i.e., that she had a specific "intent to deceive [Mr. Reed, or her landlord] for the purpose of gaining a material advantage over [them] . . . by some false statement or false representation of fact." *See Pugh*, 104 Cal.App.4th at 72; *Blankenhorn*, 485 F.3d at 472; *Gasho*, 39 F.3d at 1428; CALCRIM 1900. Instead, Appellees investigated Mr. Reed's forgery allegations and discovered that Mr. Reed lied when he told LASD

---

[5] *See Nichols v. Macias*, 695 F. App'x 291, 292–93 (9th Cir. 2017) ("the undisputed facts do not establish probable cause to believe that Raymond and Daniel had the requisite intent to commit grand theft"); *Nichols v. City of Riverside*, 775 F. App'x 845–846 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2669 (2020) ("We have held that the existence of a dispute . . . [that is] civil in nature . . . ordinarily do[es] not give rise to probable cause to arrest. . . . The district court therefore properly held that Defendants were not entitled to immunity because the law was clearly established at the time of Plaintiffs' arrest in 2013").

investigators that he "never lived at the [Nisqualli] address," that he never "ever sign[ed] a lease for himself anyone else" at that address, and that he had no "ties to Victorville, CA." (2-ER-52— 67, 239—243; 3-ER-354.) Appellee Cornett personally confirmed with the landlord for the Nisqualli address that Mr. Reed had in-fact lived that address and was a co-signer on the application for the lease. (2-ER-53—62; 205—211, 228—231, 239—243.)

These revelations corroborated Ms. Browder's account, and also put Appellees on notice that Mr. Reed had repeatedly lied in the course of the investigation. [6] (*See* 2-ER-239—243; 3-ER-354.) Based on the totality of circumstances known to Appellees at the time of the arrest, no reasonable officer would believe they had probable cause of Ms. Browder's "specific intent" to defraud Mr. Reed. *See Gallagher*, 287 F.App'x at 573; *Nichols*, 695 F. App'x at 292–93; *Stevens*, 298 F.3d at 882-84; *Kennedy*, 901 F.2d at 706.

Moreover, as with the plaintiff in *Stevens*, Ms. Browder's "reasonable and actual claim of right put [Appellees] on notice that the dispute was a civil matter not involving criminal intent." *See Stevens*, 298 F.3d at 882-84; *Peterson,* 60 F.3d at 476–77; *see also Kennedy*, 901 F.2d at 706. Appellees were aware that Mr. Reed and Ms. Browder had been sued over unpaid rent at the Nisqualli address, and that

---

[6] As explained further below, had the magistrate been informed about Mr. Reed's repeated lies about his involvement with Ms. Browder, the magistrate likewise would have recognized that

Mr. Reed therefore had a financial interest in distancing himself from the lease. (2-ER-26, 239—240.) Appellees were aware that Ms. Browder claimed that Mr. Reed had consented to extending the lease, and that he consented to her signing his name. (2-ER-241—242.) And although Mr. Reed claimed that he never consented to Ms. Browder extending the lease, Appellees were also aware that Mr. Reed had lied to LASD about virtually every aspect of his story. (*See* 2-ER-239—242; 3-ER-354.) Thus, Appellees were on notice that they were dealing with what amounted to a civil dispute over unpaid rent. *See Stevens*, 298 F.3d at 882-84; *Peterson,* 60 F.3d at 476–77; *see also Kennedy*, 901 F.2d at 706. Such a dispute, "[b]y its definition . . . cannot give rise to probable cause." *Allen*, 73 F.3d at 237.

Even assuming Appellees had probable cause at one point in their investigation, Appellees were not at liberty to "disregard facts tending to dissipate probable cause." *See Sialoi*, 823 F.3d at 1232. When Appellee Cornett spoke with Mr. Reed directly, Mr. Reed contradicted almost every material aspect of the statement he had given to the LASD. (2-ER-239—242; 3-ER-354.) When Appellee Cornett spoke with Ms. Browder, she confirmed that Mr. Reed was her ex-boyfriend, and that he did live at the Nisqualli address. (3-ER-370—371 ¶¶ 14-20.) The fact that Appellees located documents addressed to Mr. Reed inside Ms. Browder's home does not help their case, because those documents corroborate Ms. Browder's claim that Mr. Reed was her boyfriend, and cast doubt on Mr.

29

Reed's original lie that he had no connection with Ms. Browder. (2-ER-66—67.) Appellees were not entitled to "cherry pick facts to justify" their actions, and could not reasonably act "deaf and blind" to information "any prudent person would have taken into account." *Thomas*, 818 F.3d at 877; *Henderson*, 54 F.3d at 593-595.

Under the totality of circumstances available to Appellees, reasonable officers in Appellees' position would conclude that they "lacked probable cause to believe that [Ms. Browder] had the necessary specific intent to" forge Mr. Reed's signature. *See Reed*, 863 F.3d at 1205–07; *Gallagher,* 287 F.App'x at 573; *Nichols*, 695 F. App'x at 292–93; *Stevens*, 298 F.3d at 882-84; *Kennedy*, 901 F.2d at 706. Thus, Appellees lacked probable cause to believe that Ms. Browder committed forgery under Cal. Pen. Code § 470(a).

### 2. Because, Excluding Material Misrepresentations and Omissions, Appellees' Warrant Affidavit Failed to Establish Probable Cause to Believe That Appellant Browder Committed Forgery, the Warrant Was Invalid.

An arrest pursuant to an invalid warrant is a violation of the Fourth Amendment. *See People v. Sesslin*, 68 Cal.2d 418, 423-426 (1968) (warrant for forgery under Cal. Pen. Code § 470 held invalid where it failed to establish "reliability of the information and credibility of its source" and did not "set forth Any other sufficient basis upon which a finding of probable cause could be made"); *United States v. Stanert*, 762 F.2d 775, 779 (9th Cir. 1985).

Where an officer procures an arrest warrant by submitting an affidavit containing material misrepresentations, the warrant is invalid, and the resulting arrest is illegal under the Fourth Amendment. *See Franks v. Delaware*, 438 U.S. 154, 171-72 (1978); *Hervey v. Estes*, 65 F.3d 784, 788-89 (9th Cir. 1995). However, "use of deliberately falsified information is not the only way by which police officers can mislead a magistrate when making a probable cause determination." *Stanert*, 762 F.2d at 781. "By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw." *Id*. "To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning." *Id*.

Thus, the Court considers "whether the affidavit, once corrected and supplemented, establishes probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009). If a plaintiff is able to demonstrate that a warrant was issued as the result of a material misrepresentation, the arrest is actionable under 42 U.S.C. § 1983. *Hervey*, 65 F.3d at 789; *Crowe v. County of San Diego*, 593 F.3d 841, 869-70 (9th Cir. 2010). A misrepresentation based on an omission is material where the omitted facts "cast doubt on the existence of probable cause." *United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992) (internal quotation marks omitted). Where an officer's misrepresentation is the result of deliberate or

reckless disregard for the truth, the officer is not entitled to qualified immunity.[7] *Id*. at 788-789.

Here, as explained above, Appellee SBSD Deputy Sheriff Jeremiah Cornett "reviewed an incident report provided from the Los Angeles County Sheriff's Department" where Mr. Reed told LASD investigators that he "never lived at the [Nisqualli] address," that he never "ever sign[ed] a lease for himself anyone else" at that address, and that he had no "ties to Victorville, CA." (2-ER-239—240, 257—262, 3-ER-354.) The essence of Mr. Reed's statement was that he attributed his involvement with the Nisqualli address to identity theft, and his signature on the lease agreements there to forgery. But as Appellee Cornett later learned: (1) Mr. Reed *did* live at the Nisqualli Road apartment, (2) he *did* sign a lease for the Nisqualli address, (3) and he *did* have ties to Victorville, CA. Mr. Reed's ties to Victorville were quite substantial in fact, because he lived there with his girlfriend, Alaisha Browder, and received mail at the Nisqualli address. (3-ER-351—354; 370

---

[7] This Court has held that in so-called "judicial deception" cases under 42 U.S.C. § 1983, "the standard for qualified immunity . . . [is] governed by *Franks v. Delaware,* [438 U.S. 154] (1978)." *See Hervey v. Estes*, 65 F.3d 784, 788 (9th Cir. 1995). This is because "if an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, . . . he cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost." *Id*. at 788 (citation and quotation marks omitted).

¶¶ 12-13.) Appellee Cornett was aware of these facts before he applied for a warrant to search Ms. Browder's home. (See 2-ER-239—240; 3-ER-354.)

Yet, even after becoming aware of the facts above, Appellee Cornett still omitted many material facts from his warrant affidavit. (*See* 2-ER-26—29.) All told, Appellee Cornett's warrant affidavit contained the following misrepresentations or omissions:

- Falsely states that Mr. Reed "did not live with Browder" after signing the initial lease agreement (3-ER-369 ¶ 6)

- Omits the fact that Mr. Reed was Browder's boyfriend (3-ER-369 ¶ 6)

- Omits the fact that Mr. Reed made at least three false statements in his initial statement to LASD (2-ER-57—62; 3-ER-354):

  - Mr. Reed said he "never lived at the [Nisqualli] address."

  - Mr. Reed said he did not "ever sign a lease for himself or anyone else" related to the Nisqualli address.

  - Mr. Reed said he had no "ties to Victorville, CA" (and by extension, to Ms. Browder)

- Omits the fact that Mr. Reed stated that he "does not believe his mail in Palmdale has been tampered with" (3-ER-354)

- Falsely states that "Reed did not give Browder consent" to sign his name to renew the lease. (3-ER-369 ¶¶ 1-6.)

33

With the above omissions "corrected and supplemented," and misrepresentations excluded, Mr. Cornett's warrant affidavit evinces at most a dispute about unpaid rent between Ms. Browder and her unfaithful boyfriend. *Ewing*, 588 F.3d at 1224; *Reed*, 863 F.3d at 1205–07; *see also Gallagher,* 287 F. App'x at 573; *Nichols*, 695 F. App'x at 292–93; *Stevens*, 298 F.3d at 882-84; *Kennedy*, 901 F.2d at 706. It does not establish Browder's specific intent to defraud Mr. Reed, or anyone else.

Given that Appellees learned about Mr. Reed's lies before applying for the warrant, Appellee Cornett's omissions and misrepresentations constitute a deliberate—or, at best, reckless—attempt to "manipulate the inferences a magistrate will draw" about Ms. Browder. *Stanert*, 762 F.2d at 781; *Hervey*, 65 F.3d at 789. Without information pertaining to Mr. Reed's repeated falsehoods, the magistrate could not effectively evaluate his reliability as the source of accusation against Ms. Browder. *Franks*, 438 U.S. at 165 ("If an informant's tip is the source of information, the affidavit must recite . . . some of the underlying circumstances from which the officer concluded that the informant . . . was `credible' or his information `reliable.' "); *Benn v. Lambert*, 283 F.3d 1040, 1055 (9th Cir. 2002) ("Information demonstrating that [an informant] had regularly lied to the authorities while acting as an informant, was untrustworthy and deceptive, and was even willing to fabricate crimes in order to gain a benefit for himself would have severely undermined his credibility"); *Stanert*, 762 F.2d at 779 (" 'To credit a confidential

source's information in making a probable cause determination, the affidavit should

support an inference that the source was trustworthy and that the source's

accusation of criminal activity was made on the basis of information obtained in a

reliable way.' " [quoting *United States v. Landis,* 726 F.2d 540, 543 (9th Cir.

1984)]). Had information about Mr. Reed's repeated lies and his connection to Ms.

Browder been included in Cornett's warrant affidavit, it would have "cast doubt on

the existence of probable cause," and the application would have been

denied. *Garza*, 980 F.2d at 551. Thus, Cornett's misrepresentations and omissions

were "material" for purposes of a Fourth Amendment claim under 42 U.S.C. §

1983. *See Stanert*, 762 F.2d at 781; *Hervey*, 65 F.3d at 789.

The District Court erroneously held that "Cornett's alleged omitted statements

are not material because 'after amending the warrant to omit the alleged

misrepresentations and add the alleged omission[s], probable cause still exists.' " (1-

ER-10 [citing *Beltran v. Santa Clara Cnty*., 389 F. App'x 679, 681 (9th Cir. 2010)].)

This was error. First, the District Court never addressed the omission of the fact Mr.

Reed repeatedly lied about numerous important details in his initial report to LASD.

(1-ER-9—10; 2-ER-26—27.)[8] Certainly the fact that that Mr. Reed initially lied to

---

[8] The District Court's analysis states, mistakenly, that Appellants alleged
that Cornett omitted the fact that "Reed signed the 2015 Lease" from his warrant
affidavit. (1-ER-9—10.) That is incorrect. Cornett's affidavit omits the fact that
*Mr. Reed lied about signing the 2015 lease* in his initial interview with LASD. (*See*

incriminate Ms. Browder before changing his story is a material fact because it "casts doubt on" everything else he says about the case. *Franks,* 438 U.S. at 165; *Stanert*, 762 F.2d at 779; *Benn*, 283 F.3d at 1055. If the magistrate is asked to accept as a material fact that "Reed said he did not give her consent to sign the 2016 Lease,"[9] then the fact that Mr. Reed previously lied to deny "ever sign[ing] a lease for himself anyone else" is also material, along with the fact that he denied having any "ties to Victorville, CA." (*See* 3-ER-354.)

The District Court also erred in ruling that "the omitted statements concerning Reed's prior cohabitation with Browder," or the fact that Mr. Reed defrauded Browder of money "to buy a home," and "Reed being a gang member are not material because they do not "render[] an otherwise truthful statement to be false or misleading." (1-ER-9—10.) A witness's personal relationship to a suspect, romantically, financially, or otherwise, is certainly material to the magistrate's tasks because they can explain a witness's motives. Here the fact that Mr. Reed was Ms. Browder's boyfriend, and that he lived at the Nisqualli address, and that he stole Ms. Browder's money are all material facts, because Mr. Reed previously intimated that

---

2-ER-26—27; 3-ER-354.) The fact that Mr. Reed lied is the material fact. *See Franks,* 438 U.S. at 165; *Stanert*, 762 F.2d at 779.

    [9] As discussed above, Mr. Reed's statement that he "did not give [Browder] consent" to sign his name is an *allegation*—it is not evidence. Neither Appellee Cornett nor the District Court pointed to any facts corroborating Mr. Reed's allegation, other than Mr. Reed's credibility.

Ms. Browder was a stranger. Certainly, the fact that Mr. Reed's name appeared on a lease with Ms. Browder is less surprising when accounting for the fact that they were romantically involved and lived together. Without that context, Appellees were able to "manipulate the inferences [the] magistrate [could] draw" and effectively "denude the probable cause requirement of all real meaning."[10] *Stanert*, 762 F.2d at 781.

Thus, excluding material misrepresentations and omissions of fact, Appellees' warrant affidavit failed to establish probable cause to believe that Appellant Browder committed the crime of forgery. The warrant was therefore invalid, and cannot justify the arrest of Appellant Browder.

> ### 3. Because Appellant Browder's Disorganized Home Did Not Constitute A Serious and Well-Founded Risk of Great Bodily Harm Or Death to Her Children, Appellees Lacked Probable Cause to Believe She Committed the Crime of Child Endangerment Under Cal. Pen. Code § 273a.

"Any person who, . . . having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is

---

[10] The District Court wrote that "a warrant affidavit need not include 'any information a plaintiff deems favorable to his or her cause,' " but an officer has no right to lie or "manipulate inferences" using the Court. *Stanert*, 762 F.2d at 781.

endangered" id guilty of a felony.[11] Cal. Pen. Code § 273a(a). The elements of

child endangerment under California Penal Code § 273a(a) are:

> 1. The defendant, while having care or custody of a child, willfully
> caused or permitted the child to be placed in a situation where
> the child's person or health was endangered;

> 2. The defendant caused or permitted the child to be endangered under
> circumstances or conditions likely to produce great bodily harm or]
> death

>    AND

> 3. The defendant was criminally negligent when she caused or
> permitted the child to be endangered

*See* CALCRIM No. 821 (brackets and parentheses excluded; language modified as

relevant to this case). Any violation of Penal Code section 273a(a) must be willful.

*People v. Smith*, 35 Cal.3d 798, 806 (1984). The word " 'likely' as used in section

273a means a substantial danger, i.e., a serious and well-founded risk, of great

bodily harm or death." *People v. Wilson*, 138 Cal.App.4th 1197, 1204 (2006).

This Court reversed a grant of summary judgment in a 42 U.S.C. § 1983 case

where Officers arrested a father for child endangerment under Pen. Code § 273a

because he was allegedly "drunk and breaking property" in the presence of children.

*Maric v. Alvarado*, 748 F. App'x 747, 749-50 (9th Cir. 2018). This Court observed

---

[11] Cal. Pen. Code § 273a(b) contains a parallel misdemeanor provision that applies to "circumstances or conditions *other than* those likely to produce great bodily harm or death." Cal. Pen. Code § 273a(b) (emphases added).

that "[i]n California, a person may violate CPC § 273a(b) either by harming a child directly, or may violate the statute 'indirectly' when he severely abuses a close relative of a child in front of the child." *Maric*, 748 F. App'x at 749 (quoting *People v. Burton*, 143 Cal.App.4th 447, 454 (2006)). However:

> **[T]he officers had no probable cause to believe that Maric committed the crime of misdemeanor child endangerment, and "there were simply no circumstances pointing to an actual or imminent injury inside the home,"** [Citation]. The officers could see that there was no actual injury to Mary and the children, and there is no evidence in the record submitted on the motion for summary judgment from which the court could infer injury was "imminent."

*Maric*, 748 F. App'x at 751 (emphases added).

Here, the basis for Appellant Browder's "child endangerment" charge comes solely from the fact that her house was messy due to the fact that she was in the process of moving. (3-ER-371—372 ¶¶ 22-25.) Ms. Browder informed Appellees Cornett and Boydston that she was in the process of moving. She had boxed up her personal items including food which she intended to move to her new residence. She did not, as Cornett alleged, have "rotted food on the floor" of her apartment, and there were no unsafe or unsanitary conditions as a result of her keeping of food. All of her food was packed, and she had discarded unwanted food in the appropriate waste bins. Nor, as Cornett alleged, had Ms. Browder left "steak knives" all "throughout the

39

residence."[12] (*See* 2-ER-248.) Her eating utensils were packed away, ready to be moved. Later, apparently at the hands of Appellees, there were some "butter knives" which were strewn about randomly. (2-ER-248; 3-ER-372 ¶¶ 24-25.) At trial, Appellee Cornett was forced to admit the numerous false and misleading representations he had made in order to obtain Ms. Browder's prosecution, especially those concerning the condition of her apartment and any "child endangerment" it created. (*See* 2-ER-146—148, 158—160, 170, 173—178.) Thus, the very existence of the conditions which Appellees assert as evidence of "child endangerment" are disputed. (3-ER-371—372 ¶¶ 22-25; 363—365 ¶¶ 39-40, 44.) Such factual disputes must be resolved in Appellants' favor. *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc); Fed. R. Civ. P. 56(a), (c). This Court can reverse the District Court's ruling on this issue for this reason alone.

But even if Cornett's allegations about "rotten food" and "steak knives" were true, they do nothing demonstrate probable cause that Ms. Browder's children faced anything approaching "a serious and well-founded risk, of great bodily harm or death" or a risk of "imminent harm." *See Wilson*, 138 Cal.App.4th at 1204; *Maric*, 748 F. App'x at 749. In fact, the California Supreme Court has held that a butter

---

[12] Thus, notwithstanding the fact that these conditions are legally insufficient to constitute "endangerment" under Pen. Code § 273a, there is a factual dispute as to whether they actually even existed. Such factual disputes must be resolves in Appellants' favor. *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc); Fed. R. Civ. P. 56(a), (c).

knife is not inherently dangerous, i.e., it is not a weapon "*likely to produce* death or great bodily injury." [13] *See In re B.M.*, 6 Cal. 5th 528, 530 (2018). Otherwise, the alleged presence of "rotten food" in Appellant Browder's home does not remotely resemble the conditions cited in any of the cases which have sustained findings of "child endangerment" under Pen. Code § 273a.[14]

---

[13] The Court in *In re B.M.* held that "for an object to qualify as a deadly weapon based on how it was used, the defendant must have used the object in a manner not only capable of producing but also *likely to produce* death or great bodily injury . . . But speculation without record support as to how the object could have been used or what injury might have been inflicted if the object had been used differently is not appropriate." *In re B.M.*, 6 Cal.5th at 530. Thus, there is no reasonable argument that the presence of butter knives in Appellant Browder's home posed a "serious and well-founded risk, of great bodily harm or death" to her children. *Cf. Wilson*, 138 Cal.App.4th at 1204.

[14] *See, e.g., People v. Sutton*, 65 Cal.App.3d 341, 349 (1976) (Arrest justified under Cal. Pen. Code § 273a(a) where officer responded to report of "small children" of "infant" age who had "been left alone for a substantial period of time" and were not responding to repeated knocking, and officer encountered parent in "high degree of intoxication" and in a "state that she was incapacitated to care for infant children"); *People v. Brown*, 19 Cal.App.3d 1013, 1015–16 (1971) (Arrest justified under Cal. Pen. Code § 273a(b) where three unsupervised minor boys attempted to steal a tractor and "threw bricks" at people, and officers encountered mother high on drugs with "22 wax paper bags of marijuana, . . . , a half kilo of marijuana in brick form," and "104 aluminum packages, each containing three seconal tablets and a number of amphetamine and phenobarbital tablets" which she "possessed for purposes of sale," in a filthy house with "animal excretions . . . , cockroaches crawling everywhere, clothing strewn about, dirt and debris on the floor, . . . and the premises smelled of defecation"); *People v. Odom*, 226 Cal.App.3d 1028, 1033–35 (1991) (Defendant guilty of violating Pen. Code § 273a where the house was likely "being used as a clandestine manufacturing plant" for methamphetamine, and there were loaded firearms, incendiary chemicals, exposed electrical wires, dog feces from two free-roaming adult pit bulls, and numerous other hazards throughout the house, with "no indication the children were controlled or restricted in any way"); *People v. Harris*,

41

The Case of *People v. Bernal* provides a helpful illustration of the sorts of

conditions which amount to "endangerment" under Pen. Code § 273a:

> Defendant was convicted of assault with a deadly weapon . . . by pulling
> out a knife when confronted by the owner of a car he was burglarizing. .
> . . Defendant was convicted of misdemeanor child endangerment (Pen.
> Code, § 273a, subd. (b)) based on the condition of the apartment he was
> living in with two young children when he was arrested. . . . **Defendant
> argues that merely because his apartment was dirty and cluttered is
> not an adequate basis for a child endangerment conviction, and he is
> likely right about that.** But two methamphetamine pipes were also
> found in the apartment. The jury was entitled to infer from that evidence
> that methamphetamine had recently been used in the home, even though
> police did not find narcotics there. We are satisfied that keeping and
> using methamphetamine in a home with a six-year-old and a one-month-
> old meets the standard of placing children in a situation where their
> health may be endangered.

*People v. Bernal*, 42 Cal.App.5th 1160, 1168 (2019).

Thus, as the Court *suggested* in Bernal, the fact that Ms. Browder's home "was

dirty and cluttered is not an adequate basis for a child endangerment." *Bernal*, 42

Cal.App.5th at 1168. The presence of butter knives, as matter of law, without

---

239 Cal.App.2d 393, 395 (1966) (Defendant guilty of violating Pen. Code § 273a
where she housed six children in an "extremely filthy residence littered with dirt and
debris and dirty clothes," . . . food "mashed on the floor," "Cockroaches of all sizes,"
"defecation on the floor," and children who "were unattended by any adult" despite
being visibly injured, covered in defecation, "screaming with pain," and
inappropriately touching each others' "privates").

evidence that they are actively being used as weapons, cannot amount to a condition that is "likely to produce death or great bodily injury." *In re B.M.*, 6 Cal. 5th at 530. Appellees offer nothing further in support of their argument that Appellants' children were "endangered": there was no indication that Appellant Browder's home was being used as a drug lab; it was not smeared with excrement; there were no firearms or dangerous chemicals being stored there; there were no pit bulls roaming the premises; there were no cockroaches; there were no exposed electrical wires. *Cf. Sutton*, 65 Cal.App.3d at 349; *Brown*, 19 Cal.App.3d at 1015–16; *Odom*, 226 Cal.App.3d at 1033–35; *Harris*, 239 Cal.App.2d at 395. Most importantly, Appellees had no indication that Appellant Browder's children were harmed in any way by the condition of Appellant's home. *Cf. Maric*, 748 F. App'x at 749-50.

This is far from a close question. Simply put, Appellees had no basis whatsoever for misconstruing the law so grossly. Appellees lacked probable cause to arrest Appellant Alaisha Browder for child endangerment, forgery, or any other crime.

C. **Because The District Court Dismissed Appellants' Fourth Amendment Claims for Unreasonable Seizure of Person and Unreasonable Search of Property on the Basis of Probable Cause, the District's Court's Ruling on These Claims Must be Reversed.**

Here, as explained above, the District Court granted summary judgment for Appellees on Appellants' first and second claims—unreasonable seizure of person and unreasonable search of property under 42 U.S.C. § 1983, respectively. (1-ER-9—13; 6-ER-1164—1173.) The District Court's ruling was based upon the

existence of probable cause, and the validity of the warrant. (*Id.*) However, resolving all disputes of material fact in Appellants' favor, Appellees lacked probable cause to arrest Appellant Alaisha Browder for any crime, or to search her residence. (*See* 3-ER-356—367 [Plaintiffs' Statement of Genuine Material Facts in Dispute]; 368—376 [Declaration of Alaisha Browder].) Accordingly, the District Court's grant of summary judgment on Appellants' claims for unreasonable seizure of person and unreasonable search of property under 42 U.S.C. § 1983 must be reversed.

## III. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES ON APPELLANTS' CLAIM UNDER 42 U.S.C. § 1983 FOR MALICIOUS PROSECUTION.

Malicious prosecution "consists of initiating or procuring the arrest and prosecution of another under lawful process, but from malicious motives and without probable cause." *Sullivan* v. *County of Los Angeles*, 12 Cal.3d 710 (1974). A claim for malicious prosecution may be brought under the First, Fourth, and/or Fourteenth Amendments, depending upon the Constitutional rights violated. "If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." *Manuel v. City of Joliet*, 137 S. Ct. 911, 918-920 (2017); *Albright v. Oliver*, 510 U.S. 266 (1994); *Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1126 (9th Cir. 2002); *Albright v. Oliver*, 510 U.S. 266, 274-275 (1994). If the

complaint alleges that "government officials . . . subject[ed] an individual to retaliatory . . . criminal prosecutions, for speaking out," then the right allegedly infringed lies in the First Amendment. *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

Here, the elements of malicious prosecution are met. As explained at length above, Appellees procured "the arrest and prosecution of [Browder] under lawful process, but from malicious motives and without probable cause." *Sullivan* v. *County of Los Angeles*, 12 Cal.3d 710 (1974). (2-ER-232—247, 249—266.) Moreover, because of Appellees' repeated misrepresentations and omissions, both to the District Attorney, and the Court, the filing DDA, Melissa Pedroza, did not make her filing decision on the basis of true, accurate, and complete information. (*See* 3-ER-338—346.) Appellee Cornett's reports make material misrepresentations and omissions of fact which would certainly have affected a reasonable prosecutor's decision to file the case, particularly regarding the presence of knives and rotten food in the apartment. (*See* 2-ER-146—148, 158—160, 170, 173—178; 3-ER-371—373 ¶¶ 22-25, 30-31, 35.) Ms. Pedroza admitted that such misrepresentations would affect her decision to file a criminal charge. (3-ER-338—346.) Thus, Ms. Browder has presented sufficient evidence to rebut the presumption of the prosecutor's independent judgment.

Nevertheless, the District Court granted summary judgment on Appellants' malicious prosecution claim because it ruled that "probable cause supported Browder's arrest for forgery . . . and . . . probable cause supported Browder's arrest for child endangerment," which would be "an absolute defense to malicious prosecution." (1-ER-15—16.) However, because this District Court reached its probable cause rulings in error, its ruling on the malicious prosecution claim is also in error. Resolving all factual disputes in Appellants' favor, Appellees had probable cause for neither forgery nor child endangerment.

Accordingly, the District Court's grant of Appellees' motion for summary judgment as to Appellants' claim for malicious prosecution must be reversed.

## IV. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES ON APPELLANTS' FOURTEENTH AMENDMENT CLAIM UNDER 42 U.S.C. § 1983 FOR INTERFERENCE WITH FAMILIAL ASSOCIATION.

Parents and children possess a constitutionally protected liberty interest in companionship and society with each other. *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc). "[T]he interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Keates v. Koile*, 883 F.3d 1228, 1235-36 (9th Cir. 2018) (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion)). In *Kelson v. City of*

46

*Springfield*, 767 F.2d 651 (9th Cir. 1985), this Court held that the state's

interference with such liberty interest without due process of law is cognizable

under 42 U.S.C. § 1983. *Id*. at 654. The protected liberty interest is independently

held by the parent or child—it is not a right to sue on behalf of the decedent or

other injured child or parent. *Id*. at 653 n. 2. For parents, the right to familial

association is generally grounded in the Fourteenth Amendment's Due Process

Clause, while claims brought by children are evaluated under the more "specific"

Fourth Amendment right to be free from unreasonable seizures. *See Kirkpatrick v.*

*County of Washoe*, 843 F.3d 784, 788–89 & n.2 (9th Cir. 2016) (en banc).

However, "the same legal standard applies in evaluating Fourth and Fourteenth

Amendment claims for the removal of children." *Keates*, 883 F.3d at 1236

(quoting *Wallis*, 202 F.3d at 1137 n.8).

      This Court recently denied qualified immunity where an officer's deception

of the Court caused a Fourteenth Amendment violation of the right to familial

association. *David v. Kaulukukui*, No. 21-15731, 2022 WL 2299036, at *5 (9th Cir.

June 27, 2022).

> Kaulukukui does not dispute that David and her daughter have a
> constitutional right to familial association—nor could she. . . .
> Kaulukukui instead argues that the violations that David alleges were
> not "clearly established" under the specific facts presented in this
> case. We disagree. A right is clearly established if its contours are
> "sufficiently clear that a reasonable official would understand that
> what [s]he is doing violates that right." *Rice v. Morehouse*, 989 F.3d

1112, 1125 (9th Cir. 2021) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

*David v. Kaulukukui*, No. 21-15731, 2022 WL 2299036, at *5 (9th Cir. June 27, 2022).

Here, as explained at length above, Appellees lacked probable cause to arrest Ms. Browder for child endangerment, and there were no circumstances suggesting an emergency to that effect. *Maric v. Alvarado*, 748 F. App'x 747, 751 (9th Cir. 2018). Nevertheless, Appellees authored documents containing material misrepresentations and omissions in order to cause Ms. Browder's arrest and prosecution for child endangerment. Thus, Appellees' actions in arresting Ms. Browder and depriving her of the company D.K.A. and M.K.T. also amount to a deprivation of due process of law based upon the fundamental right to familial association. *Keates*, 883 F.3d at 1235-36 (9th Cir. 2018); *Kelson*, 767 F.2d at 651.

Accordingly, the District Court's granting of Appellees' Motion for summary judgment, as to Appellants' claim for Fourteenth Amendment interference with the parent/child relationship, should be reversed.

## V. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES ON APPELLANTS' FOURTEENTH AMENDMENT CLAIM UNDER 42 U.S.C. § 1983 FOR DELIBERATE FABRICATION OF EVIDENCE

In *Devereaux v. Abbey*, this Court stated that in order to establish deliberate fabrication of evidence, a plaintiff:

48

> must, at a minimum, point to evidence that supports at least one of the
> following two propositions: (1) Defendants continued their
> investigation of [the plaintiff] despite the fact that they knew or
> should have known that he was innocent; or (2) Defendants used
> investigative techniques that were so coercive and abusive that they
> knew or should have known that those techniques would yield false
> information.

263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court held that "there is a

clearly established constitutional due process right not to be subjected to criminal

charges on the basis of false evidence that was deliberately fabricated by the

government." *Id*. at 1074-1075. Because "actual deliberation is practical" in this

context, "an officer's 'deliberate indifference' may suffice to shock the

conscience." *Gantt v. City of L.A.*, 717 F.3d 702, 707-708 (9th Cir. 2013);

*Tennison v. City & County of San Francisco*, 570 F.3d 1078, 1089 (9th Cir.

2009). Deliberate indifference encompasses "recklessness disregard." *Castro v.*

*County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc). The mere

"fact that [a plaintiff] was eventually acquitted does not . . . bar [a] Section 1983

action stemming from violations of her rights during the underlying criminal

investigation and prosecution." *Soo Park v. Thompson*, 851 F.3d 910, 915 (9th Cir.

2017).

An official's deliberate fabrication of evidence or use of perjury also violates

the rights of a parent or child when introduced in the context of dependency

proceedings. "[G]overnment perjury and knowing use of false evidence are

absolutely and obviously irreconcilable with the Fourteenth Amendment's

guarantee of Due Process in our courts . . . There are no circumstances in a dependency proceeding that would permit government officials to bear false witness against a parent." *Hardwick v. Vreeken*, 844 F.3d 1112, 1120 (9th Cir. 2017). *See also Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (describing as "virtually self-evident" the constitutional due process right to not be subjected to criminal charges based on deliberately false evidence).

Here, as explained above, Appellees fabricated evidence to procure Ms. Browder's prosecution for child endangerment because they knew their forgery investigation was fruitless—they planted butter knives throughout her house, then lied in their reports to call them "steak knives." (See 3-ER-371—372 ¶¶ 22-25.) Appellees also lied about the state of Appellant Browder's home in order to make it sound putrid and "uninhabitable"—an allegation the District Court accepted uncritically. (*Id.*) Indeed, Browder was never charged with forgery. At trial, Appellee Cornett was forced to admit the numerous false and misleading representations he had made in order to obtain Ms. Browder's prosecution, especially those concerning the condition of her apartment and any "child endangerment" it created. (2-ER-146—148, 158—160, 170, 173—178.)  After hearing Cornett admit his misrepresentations in open court, the superior court dismissed the charge against Browder based upon "the state of the evidence."  (2-ER-188—189.) Appellees' misrepresentations and omissions were done deliberately, or at least recklessly, because Defendants knew or

should have known the children had not been victims of child endangerment. Because Appellees' misrepresentations and omissions caused Ms. Browder to become separated from her children for 30 days, Appellees' deliberate indifference to her constitutional rights suffices to "shock the conscience." *Gantt v. City of L.A.*, 717 F.3d 702, 707-708 (9th Cir. 2013); *Tennison v. City & County of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009).

The District Court wrote that "it is true that Cornett's police report wrongly stated that 'steak knives' were found throughout Browder's residence—in reality, the knives were 'butter' knives. . . . At minimum that is a careless inaccuracy. But 'in an investigative report,' '[m]ere carelessness is insufficient' to establish that a falsification was deliberate." (1-ER-14—15 [citing *Spencer*, 857 F.3d at 798 (9th Cir. 2017)].) This Court should not be so permissive toward Appellees' lies. A reasonable jury could find that when an officer scatters butter knives throughout a mother's home, then calls them "steak knives" in order to convince a prosecutor to file charges for child endangerment, that officer's misrepresentation was deliberate. There are many colorful words that might accurately describe Appellees' actions, but "careless" is not among them.

Accordingly, the District Court's grant of summary judgment on Appellants' claim for deliberate fabrication / knowing use of false evidence, in violation of the due process clause of the Fourteenth Amendment, must be reversed.

## VI. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES ON APPELLANTS' FOURTH AMENDMENT CLAIM UNDER 42 U.S.C. § 1983 FOR EXCESSIVE FORCE.

When an officer seizes a person by using "excessive force," his conduct violates that person's Fourth Amendment right to be free from unreasonable seizures. *See Brower v. County of Inyo,* 489 U.S. 593, 596 (1989); *Graham v. Connor,* 490 U.S. 386, 395 (1989). In evaluating objective "reasonableness" of force, the Court considers "[1] the severity of the crime at issue,[2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Ibid*. In addition, "the availability of alternative methods of capturing or subduing a suspect may be a factor to consider." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (citing *Chew v. Gates,* 27 F.3d 1432, 1441 n. 5 (9th Cir. 1994)).

This Court has repeatedly held that officers' "use of a drawn gun pointed . . . from close range constitute[s] excessive force," even if officers do not actually fire, particularly where "the suspect was apparently unarmed and . . . [t]here were no dangerous or exigent circumstances apparent at the time of the detention." *See Robinson v. Solano County*, 278 F.3d 1007, 1013-1014 (9th Cir. 2002) (en banc); *Motley v. Parks*, 432 F.3d 1072, 1088-1089 (9th Cir. 2005) (en banc) *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012); *Hopkins v. Bonvicino*, 573 F.3d 752, 776-777 (9th Cir. 2009).

52

Here, it in undisputed that Appellees pointed guns at Plaintiff and her minor children, all of whom were unarmed and posed no threat to Appellees, for up to 30 seconds. Cornett and Boydston admit that they detained Browder, , D.K.A., and M.K.T. at gunpoint during the search. (3-ER-373—373 ¶¶ 26-27, 382—383 ¶¶ 28-34; 4-ER-531—532 ¶¶ 25-26.) This use of force was plainly unreasonable under the circumstances, and no reasonable officer could believe otherwise. ." *See Robinson v. Solano County*, 278 F.3d 1007, 1013-1014 (9th Cir. 2002) (en banc); *Motley v. Parks*, 432 F.3d 1072, 1088-1089 (9th Cir. 2005) (en banc) *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012); *Hopkins v. Bonvicino*, 573 F.3d 752, 776-777 (9th Cir. 2009).

Nevertheless, the District Court found that the force was "reasonable" because Appellees "entered the residence with their guns drawn to conduct a protective sweep." (1-ER-16—17.) The Court distinguished *Robinson v. Solano Cnty*., 278 F.3d 1007, 1013–1014 (9th Cir. 2002) as "inapposite" because "there, officers pointed their guns from close range at a calm man on the street—not through a warrant-backed protective sweep of a home, like here." (1-ER-16—17.) Respectfully, the District Court's reasoning does not hold up under scrutiny. Nothing in *Robinson* suggests that the result would be different if the events took place inside of a home. In fact, the events in *Hopkins v. Bonvicino* took place inside of a home, under circumstances where the "suspect" was thought to be intoxicated. 573 F.3d at 776-777. Yet this

Court in *Hopkins* reached the same conclusion as in *Robinson*. Nothing in this Court's cases suggest that officers have a right to draw firearms on a mother and her children who are all compliant and apparently unarmed just because "protective sweep." Rather, this Court's cases focus on whether the suspect was "unarmed," or whether officers faced "dangerous or exigent circumstances apparent at the time of the detention." *See Robinson*, 278 F.3d at 1013-1014; *Hopkins*, 573 F.3d at 776-777. The District Court's reasoning would allow officers to point firearms at civilians as a matter of course, so long as it was in service of a "protective sweep."

Accordingly, the District Court's granting of Appellees' Motion for summary judgment, as to Appellants' claim for Fourth Amendment unreasonable/excessive force, must be reversed.

## VII. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES ON APPELLANT'S CALIFORNIA STATE LAW CLAIMS.

### A. The District Court Erroneously Dismissed Appellants' False Arrest Claim.

"False imprisonment is 'the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short.' " *George v. City of Long Beach,* 973 F.2d 706, 710 (9th Cir. 1992) (quoting *Molko v. Holy Spirit Ass'n for Unification of World Christianity,* 46 Cal.3d 1092 (1988), *cert. denied,* 490 U.S. 1084 (1989)). Unlike Fourth Amendment unreasonable seizure claims, Defendants have the burden of showing that they had

"reasonable grounds" to believe the seizure was lawful. *Allen v. McCoy*, 135 Cal.App. 500, 507-508 (1933). Reasonable cause "is coextensive with the doctrine of probable cause . . . , but goes no further." *Cornell v. City & Cty. of San Francisco*, 17 Cal.App.5th 766, 788 (2017).

Here, the District Court dismissed Appellants' California state law false arrest claim on grounds that Appellees had probable cause to arrest Appellant Browder. (1-ER-9—12.) However, as explained above, Appellees did not have probable cause to arrest Alaisha Browder for forgery, child endangerment, or any other crime. Accordingly, the District Court's grant of summary judgment in favor of Appellees on Appellants' California state law claim for false arrest was error and must be reversed.

## B. **The District Court Erroneously Dismissed Appellants' Trespass Claim.**

"The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another. Such invasions are characterized as intentional torts, regardless of the actor's motivation." *Church of Christ in Hollywood v. Superior Court,* 99 Cal.App.4th 1244, 1252 (2002); *Mangini v. Aerojet–General Corp.,* 230 Cal.App.3d 1125, 1141 (1991). The elements of the intentional tort of trespass under California law are as follows: (1) plaintiff owned, leased, occupied, or controlled the property; (2) defendant intentionally, recklessly, or negligently entered plaintiff's property; (3) defendant lacked permission for the entry or

exceeded the scope of such permission; (4) plaintiff was actually harmed; and (5) defendant's entry was a substantial factor in causing plaintiff's harm. *See* CACI No. 2000.

Here, the District Court dismissed Appellants' California state law trespass claim on grounds that Appellees had a valid warrant to enter Appellants' home. (1-ER-9—10, 17—18.) However, as explained above, the warrant was not valid because it relied on Appellants' material misrepresentations and omissions of fact. Accordingly, the District Court's grant of summary judgment in favor of Appellees on Appellants' California state law claim for trespass to residence was error and must be reversed.

## **CONCLUSION**

For the foregoing reasons, this Honorable Court should: (1) REVERSE the District Court's grant of summary judgment in favor of Appellees; (2) REMAND this case for further proceedings.

Dated: March 17, 2023        Respectfully submitted,

            ___S/ Brenton W. Aitken Hands_____

            BRENTON W. AITKEN HANDS,

            ATTORNEY FOR APPELLANTS

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form17instructions.pdf

**9th Cir. Case Number(s)** | 22-55846

The undersigned attorney or self-represented party states the following:

⦿ I am unaware of any related cases currently pending in this court.

○ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

○ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | s/Brenton Aitken Hands | **Date** | March 17, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 17**         *New 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-55846

I am the attorney or self-represented party.

**This brief contains** | 13,882 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

( ● ) complies with the word limit of Cir. R. 32-1.

( ○ ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ○ ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ○ ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ○ ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

( ○ ) complies with the length limit designated by court order dated [ ].

( ○ ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Brenton Aitken Hands | **Date** | March 17, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*